Argued and submitted April 6, the decisions of the Court of Appeals and trial court affirmed July 26, 1988

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## JAMES FRANCIS MANZELLA, JR.,
*Petitioner on Review.*

## (TC 60647; CA A43306; SC S34693)

759 P2d 1078

Steven R. Cotton, Gladstone, argued the cause and filed the petition on behalf of the petitioner on review.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause and filed the response on behalf of the respondent on review. With him on the response were Dave Frohnmayer, Attorney General and Virginia L. Linder, Solicitor General, Salem.

GILLETTE, J.

## GILLETTE, J.

The issue in this criminal case is whether the state produced sufficient "other evidence" at trial to corroborate defendant's confession for the purpose of ORS 136.425(1), which provides that, in a criminal prosecution, the state must provide "some * * * proof," other than the defendant's confession, "that the crime has been committed."[1] The Court of Appeals concluded that the state produced sufficient evidence to corroborate defendant's confession and affirmed his conviction. *State v. Manzella*, 88 Or App 258, 744 P2d 1321 (1987). We affirm.

Defendant was charged with driving while suspended. *Former* ORS 811.175(1). At trial, the state's only witness was Officer Erickson of the Oregon City Police Department. On the evening in question, Officer Erickson had been dispatched to the scene of an automobile accident. When he arrived at the scene, there were no vehicles in the roadway, but the vehicles allegedly involved in the accident were parked in a nearby parking lot. Defendant was present at the parking lot. He told the officer that his car was a 1976 Toyota two-door sedan and that he had been stopped in the traffic lane waiting to turn left when he was hit from behind by another vehicle. Erickson checked defendant's driver license number and discovered that defendant's driving privileges had been restricted and that he was driving outside the limits of those restrictions. When Erickson confronted defendant with this information, defendant admitted that he knew he had been driving in violation of the restrictions. Defendant was then cited for the present offense.

Erickson did not see defendant drive, nor did he recall seeing defendant's car at the scene of the accident. The state did not produce any witnesses who saw defendant driving. There was no physical evidence that defendant had been driving or that his car had been at the scene.

Defendant moved for a judgment of acquittal on the ground that the state failed to produce any evidence to corroborate his confession, in violation of ORS 136.425(1). The

---

[1] Although ORS 136.425(1) does not use the term, *"corpus delicti,"* it codifies a version of the common law *corpus delicti* rule. We refer to it interchangeably as the *corpus delicti* or the "corrorboration of confessions" rule.

trial court denied his motion, and defendant was convicted. He appealed the denial of his motion for acquittal.

The Court of Appeals noted that, in order to satisfy ORS 136.425(1), the state must produce some evidence, other than defendant's confession, that (1) defendant was driving, (2) without a valid driver license. 88 Or App at 262. The disputed element is whether defendant had been driving. A majority of the Court of Appeals, sitting in banc, found sufficient evidence to establish that element.

The Court of Appeals majority first noted that, because Erickson checked defendant's driver license number, it was reasonable to infer that defendant had given him the number. That defendant gave Erickson his driver license number, in the majority's view, was some evidence that defendant had been driving. The Court of Appeals also relied on defendant's statements to Erickson that his car had been involved in the accident. The court concluded that those statements were not "confessions" under the following definition:

> "A 'confession' is a voluntary admission or declaration made by a person who has committed a crime, to another, of the agency or participation which that person had in it. * * * In a legal sense a 'confession' is restricted to an acknowledgment of guilt made by a person after an offense has been committed, and does not apply to a mere statement or declaration of an independent fact from which such guilt may be inferred. * * * An 'admission' is a concession or voluntary acknowledgment made by a party of the existence of certain facts that are relevant to the cause of the adversary. * * * The words 'confession' and 'admission' are not synonymous. 'Confession' relates to the acknowledgment of guilt; 'admission' relates to the acknowledgment of a fact." (Citations omitted).

88 Or App at 262-63 n 2 (quoting *State v. Allen*, 79 Or App 674, 680-81, 720 P2d 761, *rev den* 301 Or 765 (1986)).[2] The court concluded that, because defendant's statements were "admissions" rather than "confessions," they did not require corroboration.[3]

---

[2] *State v. Allen* did not involve the corroboration of confessions rule; rather, it involved the construction of a term in a plea agreement granting the defendant immunity from prosecution for all crimes "confessed to."

[3] The Court of Appeals also found corroboration in defendant's failure to protest upon receiving a citation for driving while suspended. 88 Or App at 263. A review of the record reveals that the state produced no evidence regarding defendant's reaction, or lack of reaction, to receiving the citation. Therefore, the Court of Appeals' assumption that defendant failed to object was mere speculation and may not be used to corroborate his confession.

The dissent below argued that there was no evidence in the record, aside from defendant's own declarations, that he had been driving. As to those declarations, the dissent argued:

"In this case, defendant confessed that he was driving in violation of his license restrictions. His statements regarding his participation in the accident were, therefore, made in recognition of that fact and are part of the confession. * * * Contrary to the majority's assertions, there is no bright line to distinguish which of defendant's statements are admissions and which are confessions. In the absence of proof other than defendant's statements, I would hold that the statements are not sufficiently separate from the confession to corroborate the confession."

88 Or App at 265 (Young, J., dissenting) (citations omitted; footnote omitted). The dissent went on to point out that, even if defendant's statements were admissions rather than confessions, it is not clear that admissions can be used to corroborate a confession, citing *State v. Lerch,* 296 Or 377, 398 n 21, 677 P2d 678 (1984). *State v. Manzella, supra,* 88 Or App at 265. We allowed review to determine what constitutes a "confession" for the purpose of ORS 136.425(1).

We have held that ORS 136.425(1) requires the state to produce enough evidence apart from a confession, either direct or circumstantial, "from which the jury may draw an inference that tends to establish or prove that a crime has been committed." *State v. Lerch, supra,* 296 Or at 398. Lerch was charged with the murder of a seven-year old boy whose body never was found. After the boy's disappearance, Lerch told his sisters that he had seen his duffel bag in a garbage dump box and that it had contained a body. He subsequently confessed to the police that he had strangled the boy and hidden the body in the dump box. This court did not decide whether Lerch's statements to his sisters would have been sufficient to corroborate his confession, because it found sufficient evidence, apart from those statements, to corroborate the confession. *Id.* at 398 n 21.

In this case, the only evidence, apart from defendant's declarations, was the following: (1) Defendant was present at the scene of a reported automobile accident; and (2) Erickson checked defendant's driver license number.

The first item, standing alone, is insufficient. A jury

could not infer that defendant had been driving from his mere presence on the street.

From the second item, a jury could conclude that defendant gave his driver license number to Erickson. Without more information, however, the jury could not infer the *reason* that he did so. For example, there was no evidence whether defendant volunteered the information or whether Erickson asked him for it. A witness at the scene of an accident, confronted with a uniformed police officer asking for identification, might well comply even if he had not been driving one of the vehicles involved in the accident. Because there is no evidence suggesting why defendant gave Erickson his license number, a jury could not infer that he did so because he had been driving. That evidence, standing alone, is not sufficient to establish the driving element of the *corpus delicti* for driving while suspended.

Because the state did not produce sufficient evidence, other than defendant's statements, to establish that a crime had been committed, this case squarely presents the issue left undecided in *State v. Lerch, supra:* whether some of defendant's statements to Erickson may suffice to corroborate his confession. Resolution of that issue depends on the definition of "confession," as that word is used in ORS 136.425(1).

The law of confessions and admissions currently is governed primarily by constitutional principles. The corroboration of confessions rule, however, is not grounded in constitutional law and has its roots in earlier times. A brief examination of the context from which it arose will help further our understanding of that rule and the Oregon statute enacted to further it.

The use of a criminal defendant's statements against him or her at trial passed through three stages before arriving at the present stage, which focuses on constitutional considerations. In the earliest stage, from approximately 1500 A.D. through the middle 1700s, English courts placed no restrictions on the use of extrajudicial statements of the accused in a criminal trial. Most notably, those statements were used without regard to whether they were obtained by coercion or threats, even of torture. III Wigmore, Evidence § 818 (Chadbourn rev 1970).

Beginning in the second half of the 1700s, courts began at least to recognize the unreliability of coerced confessions. *See Warickshall's Case,* 1 Leach Cr C 298 (1783). In practice, however, very few confessions appear to have been excluded on that ground. III Wigmore, Evidence § 819.

During the 1800s, there emerged what Dean Wigmore called "a general suspicion of all confessions, a prejudice against them as such, and an inclination to repudiate them upon the slightest pretext." III Wigmore 297, § 820. Wigmore offers the following three explanations for the "sentimental excesses" committed by 19th century English courts: (1) a growing recognition that most criminals were members of the lower classes, whose crimes frequently were the result of their "hopeless poverty" rather than inherent dishonesty, and who typically possessed a submissive attitude toward those in authority; (2) the absence of the right of appeal in criminal cases, which led nisi prius judges to err on the side of caution when asked to receive a confession into evidence; and (3) a criminal defendant's inability to testify or to be represented by counsel. III Wigmore § 820a. Wigmore notes that none of these considerations justify the decisions of 19th century American courts, which, for a time, followed the British example. *Id.*

Perhaps in response to the excesses of the 19th century, some American jurisdictions, including Oregon, adopted strict definitions of the word, "confession." These courts held that, although a "confession" was presumed to be involuntary and inadmissible, an "admission" was not. In *State v. Howard,* 102 Or 431, 452, 203 P 311 (1921), this court noted that "a confession which is actually or practically an acknowledgment of guilt is *prima facie* involuntary and imposes upon the state the burden of showing that it was not induced by threats or promises of favor." Admissions, however, "which while evidentiary in character are not confessions of guilt," were "*prima facie* voluntary." *See also State v. Campbell,* 73 Kan 688, 696-701, 85 P 784, (1906) (criminal defendant's exculpatory statements while testifying before the grand jury were admissions, not confessions, and, therefore, could be admitted into evidence against him without a preliminary showing that they were voluntarily made); *State v. Romo,* 66 Ariz 174, 185 P2d 757 (1947)(the rule against admission of evidence of a defendant's statements not voluntarily made

applies only to "confessions," and not to statements against interest); *State v. Gibson,* 69 ND 70, 284 NW 209 (1939) (murder defendant signed a statement admitting that she had killed her husband to protect her daughter; the court held that the statement was not a "confession" because it could be taken as true and still not state a crime); *State v. Lindsey,* 26 NM 526, 194 P 877 (1921) (defendant in bigamy case admitted that he had been married before and did not know whether he had been divorced from his first wife; because there was no express acknowledgment of a second marriage, the statement was not a confession; therefore, there was no need to hold a preliminary hearing to determine whether it was voluntarily made). These definitions are surprisingly uniform and, typically, established a distinction between "confessions" as acknowledgments of guilt and "admissions" as acknowledgments of fact.

The *"corpus delicti"* rule also emerged during this third period. English courts first began to recognize the rule during the early 1800s. VII Wigmore, Evidence § 2070 (Chadbourn rev 1978). The rule apparently arose in reaction to a few documented instances of false confessions.[4] However, it was applied sporadically and inconsistently in England, affording little guidance to courts and legislatures in the United States.[5] VII Wigmore, Evidence §§ 2070, 2071. Although the policy behind the rule has been the subject of extensive criticism,[6]

---

[4] One of the most famous of these was *Perrys' Case,* 14 How St Tr 1312 (1660). The supposed victim failed to return home one evening, and a search revealed only his hacked and bloody hat. A servant of the victim confessed that he, his brother and his mother had murdered the victim. The three were tried, convicted and executed on the strength of the victim's disappearance, the discovery of the hat and the servant's confession. A few years later, the victim reappeared, explaining that he had been kidnapped and held as a slave in Turkey. *See* Note, *Proof of the Corpus Delicti Aliunde the Defendant's Confession,* 103 U Pa L R 638, 638-39 (1955).

[5] The major source of confusion was the failure to distinguish between two variations of the *corpus delicti* rule. One variation required corroboration of the substance of the confession, *e.g.,* that the crime had been committed. The other required only that the government produce evidence tending to establish the reliability of the confession. *See* McCormick, Evidence 366, § 145 (3d ed 1984).

[6] Many commentators argue that the *corpus delicti* rule is ineffective to ensure the reliability of confessions and that its purposes are better served by modern constitutional guarantees against the use of involuntary statements against the accused in a criminal trial. *See, e.g.,* McCormick, Evidence, 370-71, § 145; Note, *Confession Corroboration in New York: A Replacement for the Corpus Delicti Rule,* 46 Fordham L Rev 1205, 1235 (1978); Developments in the Law — Confessions, 79 Harv L Rev 938, 1084 (1966); Comment, *Corroborating Confessions: An Empirical Analysis of Legal Safeguards Against False Confessions,* 1984 Wis L Rev 1121, 1186-92 (1984); Comment, *California's Corpus Delicti Rule: The Case for Review and Clarification,* 20 UCLA L Rev 1055 (1973).

virtually every state in this country has adopted some version of it.[7]

In its discussions of the rule, this court consistently has distinguished between "confessions" and "admissions." Most of those discussions were dicta. In at least one case, however, the distinction drawn between "admissions" and "confessions" supported the holding of the court.

In *State v. Reinhart*, 26 Or 466, 477-78, 38 P 822 (1895), a prosecution for embezzlement, the court stated:

"* * * The defendant did not controvert or attempt to deny a single inculpatory fact put in proof by the prosecution, but he contends that, inasmuch as the only evidence tending to show the embezzlement is the series of false entries in the books of the firm kept by himself in the course of his employment [as the company bookkeeper], such entries are extra-judicial statements, in the nature of a confession, and not sufficient to convict him, unless corroborated by other evidence tending to show that the money or property of his employer was actually stolen or embezzled by some one: Code, § 1368 [a predecessor of ORS 136.425(1)]. In other words, the contention is that, although it appears from the books of the firm, kept by the defendant in the course of his employment, that he appropriated to his own use large sums of money belonging to his employer, which fact he attempted to conceal by false and fraudulent entries, such evidence is insufficient to convict unless there is other evidence that the firm actually lost some money. We cannot concur in this position. A 'confession,' in a legal sense, is restricted to an acknowledgment of guilt made by a person after an offense has been committed, and does not apply to a mere statement or declaration of an independent fact from which such guilt may be inferred. * * * The entries of the defendant in the books of account which he was required to keep are not confessions or admissions of guilt, but are perfectly innocent in themselves, and it is only because they are shown to be false and fraudulent that the inference is irresistible, from the manner in which they were made, that they were intended to cover up his misappropriation of the funds of his employer." (Citations omitted.)

The court concluded that the entries in the account books were sufficient to prove the *corpus delicti. Id.* at 479.

---

[7] The primary holdout, Massachusetts, recently adopted the rule. *Commonwealth v. Forde,* 392 Mass 453, 466 NE2d 510 (1984). Wisconsin requires only "corroboration of any significant fact." *Holt v. State,* 17 Wis 2d 468, 480, 117 NW2d 626 (1963).

In *State v. Rogoway,* 45 Or 601, 610, 78 P 987, 81 P 234 (1905), a prosecution for arson, the defendant had told a witness that he had been smoking a cigar in bed, that he put it down and went to sleep and that "the next thing he knew he was awakened by smoke and flames." *Id.* The court relied on that statement to establish that the fire was "of incendiary origin," thereby corroborating the defendant's separate confession. *Id.*

In *State v. Brinkley,* 55 Or 134, 104 P 893, 105 P 708 (1909), a prosecution for larceny of a calf, the defendant told witnesses "that he bought the four cows and three calves, that he butchered the three calves, so bought, and sold them to the butcher, that the dry cow was the '3S' cow, not the Boyce cow [whose calf allegedly was stolen] * * *." *Id.* at 142. The court held that those statements (which were corroborated by the testimony of witnesses who helped the defendant drive the cows and load the calves onto a wagon) "were statements of facts, not amounting to admissions of guilt, and hence do not come within the prohibition" of the *corpus delicti* rule. *Id.* at 142.

*See also State v. Fong,* 211 Or 1, 314 P2d 243 (1957) (victim's body found on a hillside, wrapped in blankets and tied up with rope; cause of death was barbiturate poisoning, and there was no apparent motive for suicide; that evidence held sufficient to establish that death was caused by the criminal agency of someone. In dictum, the court also suggested that the defendant's statements could corroborate her confession for the purpose of the *corpus delicti* rule); *State v. Weston,* 102 Or 102, 115, 201 P 1083 (1921) (declarations and admissions of the defendant, apart from his confession, afforded some proof of the *corpus delicti*; however, it is not clear which statements the court considered to be "admissions," and the defendant's conviction was reversed on other grounds); *State v. Stevenson,* 98 Or 285, 291, 193 P 1030 (1920) (prosecution for adultery; "confession" defined as "the voluntary admission or declaration made by a person who has committed a crime or misdemeanor, to another, of the agency or participation which he had in the same").

The state argues that the legislature has demonstrated an intent to retain the distinction between "confessions" and "admissions" for the purpose of ORS 136.425(1).

In 1864, the Oregon legislature enacted the following version of the *corpus delicti* rule:

> "A confession of a defendant, whether in the course of judicial proceedings, or to a private person, cannot be given in evidence against him, when made under the influence of fear, produced by threats; nor is a confession only, sufficient to warrant his conviction, without some other proof that the crime has been committed."

General Laws of Oregon, § 214 (Deady 1845-1864).[8]

■     That statute survived without material change until 1957, when the legislature added subsection (2) and inserted the words "or admission" to the first clause of subsection (1). Or Laws 1957, c 567, § 1 [HB 513]. As originally proposed, HB 513 also would have amended the second clause of subsection (1) to read: "[N]or is a confession *or an admission of the defendant* sufficient to warrant his conviction without some other proof that the crime has been committed." The House Judiciary Committee also amended the proposed bill to insert the words ", or both," between "defendant" and "sufficient." The Senate Judiciary Committee later deleted the words "or an admission of the defendant or both" from the proposed bill.[9] The bill was passed into law with the Senate amendments and has not been materially amended since that time. The present version of ORS 136.425(1) reads as follows:

> "A confession or admission of a defendant, whether in the course of judicial proceedings or otherwise, cannot be given in evidence against the defendant when it was made under the influence of fear produced by threats; nor is a confession only sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed."

This statute requires that the state produce "some evidence," other than the defendant's confession, that the crime charged has occurred. As a general rule, it is not necessary that the state produce independent evidence identifying the defendant

---

[8] Prior to 1864, a substantially similar provision was in effect. Oregon Code 1853, ch XXXVI, § 5.

[9] Senator Corbett indicated that the deletions were not made "for any particular reason except that they did not have sufficient time to discuss the policy involved." Minutes, Senate Judiciary Committee, May 18, 1957, p 2.

as the one who caused the harm.[10] *See, e.g., State v. Keller,* 240 Or 442, 451-52, 402 P2d 521 (1965); *State v. Paquin,* 229 Or 555, 560, 368 P2d 85 (1962); *State v. Henderson,* 182 Or 147, 191, 184 P2d 392 (1947).

It has been argued that, at least for the purpose of the requirement of corroboration, the distinction between "admissions" and "confessions" is illogical, and that it is impossible to distinguish between the two terms with any degree of precision. *See, e.g.,* Slough, *Confessions and Admissions,* 28 Fordham L Rev 96, 106-109 (1959); Comment, *Corroborating Confessions: An Empirical Analysis of Legal Safeguards Against False Confessions,* 1984 Wis L Rev 1121 (1984). *See also Opper v. United States,* 348 US 84, 90, 75 S Ct 158, 99 L Ed 101 (1954) ("We think that an accused's admissions of essential facts or elements of the crime, subsequent to the crime, are of the same character as confessions and that corroboration should be required * * *."); *Smith v. United States,* 348 US 147, 155, 75 S Ct 194, 99 L Ed 192 (1954) ("An admission which assumes this importance in the presentation of the prosecution's case should not go uncorroborated, and this is true whether we consider the statement an admission of one of the formal 'elements' of the crime or of a fact subsidiary to the proof of these 'elements.' It is the practical relation of the statement to the government's case which is crucial, not its theoretical relation to the definition of the offense.").

■ Those arguments have force. However, the corroboration of confessions rule is not a court-made rule in this state, and we are not free to adopt a version that conflicts with ORS 136.425(1). This court's practice of distinguishing between "admissions" and "confessions" for the purpose of ORS 136.425(1) has been consistent and longstanding. In light of that precedent, the 1957 legislature's rejection of the proposed addition of the words "or admission" in 1957, and its failure to amend the statute since that time, it seems clear that the legislature intended to distinguish between "confessions" and "admissions" for the purpose of the corroboration requirement.

The sole question remaining is whether any of this

---

[10] This case is somewhat unusual in that defendant's identity as the driver *is* part of the *corpus delicti*. In a prosecution for driving while suspended, no crime is committed unless the defendant was the driver.

defendant's declarations qualify as "admissions" rather than "confessions." Because so many of this court's discussions of the distinction between those two terms have been dicta, it is difficult to distill from those cases any clear line dividing the two.

■ The state argues that a "confession" must include admissions of every material element of the crime charged. There is no support in our previous opinions for imposing such a requirement.[11] We decline to do so here, or to adopt any other definition of a "confession" that focuses on a statement's content; *i.e.,* whether the thing confessed to is actually a crime, whether the speaker has acknowledged every "material" element of a crime, or whether the statements are "direct" acknowledgments of guilt or factual assertions from which guilt may be inferred. The definition of a "confession" should not depend on the speaker's ability, either through knowledge of criminal law or by pure accident, to recite every element of the crime charged.

Additionally, a content-based distinction simply is unworkable. It frequently is difficult to determine exactly what "elements" comprise the *corpus delicti.* The common law *"corpus delicti"* rule arose at a time when the elements of almost all crimes were relatively simple. As our society's definitions of crimes become increasingly more complex, such problems arise as whether the *corpus delicti* of felony murder includes the underlying felony, or whether the *corpus delicti* of a criminal RICO charge includes proof of all predicate acts. *See* McCormick, Evidence 367-68, § 145 (3rd ed 1984).[12]

---

[11] In another context, this court has stated that a statement should not be considered a "confession" if "the facts admitted may have been taken as entirely true, and still be consistent with perfect innocence." *State v. Porter,* 32 Or 135, 147, 49 P 964 (1897). In that case, the defendant objected to jury instructions characterizing his extrajudicial statements as "confessions," arguing that he had not confessed and that the instructions might mislead the jury into believing that he had. *See also State v. Heidenreich,* 29 Or 381, 45 P 755 (1896) (defendant's exculpatory statements were not "confessions;" trial court erred in characterizing them as such in its jury instructions).

[12] Moreover, the use of a mechanical, content-based test could lead to results that the legislature is unlikely to have intended. Suppose, for example, a defendant confesses that he stole money from the pocket of an elderly man sleeping on a park bench. At trial, the victim, an elderly man, testifies that he was sitting on a park bench when the defendant approached him and struck him, knocking him unconscious. However, the victim cannot recall whether he had been carrying money on that day, and so cannot testify that any money was stolen. Under the rule proposed by the state, if the defendant is prosecuted for theft, his statement is a confession and, as such, will not

■■    In *State v. Reinhart, supra,* this court held that the defendant's bookkeeping entries were not a "confession" because the defendant was required to make the entries as part of his job; he did not make them for the purpose of acknowledging guilt. Thus, it appears that statements made for some purpose other than to acknowledge guilt, *i.e.,* exculpatory statements or statements made as part of a person's employment duties, are not confessions. It follows, then, that a "confession" must have been made after the commission of the crime in question, for the purpose of acknowledging that the speaker is guilty of some criminal offense. If, in the course of the confession, the accused admits one or more elements of the crime charged, the state must produce "some other evidence" of that element.[13] With these guidelines in mind, we turn to the statements made in this case.

■    Defendant's statement that he knew he was driving in violation of his license restrictions was, without doubt, a confession. The disputed statement is defendant's assertion that he was rear-ended by another car while waiting to turn left. Defendant did not make that statement for the purpose of acknowledging guilt; he made it to further Erickson's investigation of an automobile accident. As long as that statement was not so closely related to his confession as to be a part of it, it does not require corroboration under ORS 136.425(1).

Defendant's statement was made at the beginning of Erickson's investigation. Afterward, there was a break while the officer checked the driver license number. It was only after the officer confronted him with the result of the driver license number check that defendant confessed. We hold that defendant's initial statement was not part of his confession. Therefore, the statement could be used to provide some proof, other than the confession, that defendant had been driving.

---

support his conviction, because there is no other evidence to prove that anything was stolen. However, if the defendant is prosecuted for robbery, his statement is merely an admission, because he did not admit the use of force; the statement, therefore, would be admissible even in the absence of corroborating evidence.

*Cf. State v. Fortune,* 196 Iowa 995, 195 NW 740 (1923) (accused's statement that he robbed a store and took certain items not a "confession" to a charge of breaking and entering the store; therefore, the trial court did not err in refusing to give requested *corpus delicti* instruction).

[13] We emphasize, however, that *all* statements made during the course of a confession are protected by ORS 136.425(1). The state may not dissect a confession and use isolated statements to corroborate the "core" of the confession.

The decisions of the Court of Appeals and the trial court are affirmed.