Argued and submitted March 25, reversed December 1, 2010, petition for review denied March 25, 2011 (350 Or 131)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOSHUA NORMAN KELLEY,
*Defendant-Appellant.*

Washington County Circuit Court
C070526CR; A137379

243 P3d 1195

David O. Ferry, Assistant Chief Defender, argued the cause for appellant. On the briefs were Peter Gartlan, Chief Defender, and Rebecca Duncan, Assistant Chief Defender, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R.

Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

Defendant appeals his convictions for eight counts of first-degree sexual abuse, ORS 163.427, and eight counts of first-degree sodomy, ORS 163.405. He assigns error to the trial court's denial of his motion for judgment of acquittal on all counts. Defendant asserts that the state's case at trial hinged on three groups of self-incriminating statements that he made. He contends that those statements were confessions because he made them with the purpose of acknowledging guilt. He argues further that the state failed to produce evidence corroborating the confessions and, consequently, that they could not serve as the basis for conviction. The state responds that defendant's statements were admissions, not confessions, and thus needed no corroboration. It goes on to argue that, even if one or more of the statements was a confession, there is sufficient corroboration to support defendant's convictions. We conclude that defendant's statements were uncorroborated confessions, and, accordingly, we reverse.

The 16 counts with which defendant was charged arose from three groups of statements defendant made regarding sexual conduct with his daughter, J, and his ex-girlfriend's son, H. Defendant made the first group of statements (four separate statements) to a friend, Hayes. Defendant and Hayes worked together until February 20, 2006, when defendant quit his job. Hayes called him that day to ask why he had left work. Defendant told her that he had quit his job "because he thought he touched his kids." Hayes asked him, "[W]hat do you mean you touched them[?]" Defendant replied simply, "I touched them." Hayes then said, "[E]ither you did or you didn't." Defendant told her that he did. Defendant did not say where he had touched the children, but Hayes testified at trial that she knew "exactly what he was talking about * * * [b]ecause that's how we talk about that * * *." Defendant also told her, "Don't worry, I didn't touch your children * * *." Hayes told him to "rot in hell" and hung up.

Defendant made the second group of statements about sexual abuse on March 7, 2006, during a men's group counseling session. As part of his counseling, defendant was

asked to prepare a history of his sexual thoughts and practices, which he did with the assistance of another group member.

According to defendant's counselor, Milligan, on the day he made the statements, defendant appeared to have been crying when he arrived at the session. When it was defendant's turn to speak, he told the group that he wanted to apologize for lying. He turned to the man who had helped him prepare his history of sexual thoughts and practices and specifically apologized to him, saying, "I am really, really sorry because I lied to you and I need to tell the truth now. And [I] really, really am truly sorry." Defendant then told the group that he had molested his children and proceeded to tell them in some detail what he had done. He said that his ex-girlfriend, who is the mother of both children, was present during some of the abuse. He said that he had abused H on three different occasions in Beaverton and that he had abused J in Beaverton and in Grants Pass. Defendant also alleged that his ex-girlfriend had molested their younger daughter, A, but did not say that he had abused her. In Milligan's view, defendant "seemed to be begging [the group] for forgiveness" because he kept saying "over and over" that he was "very, very sorry."

At the end of the session, defendant gave Milligan his ex-girlfriend's name, address, telephone number, and date of birth, and he asked her to report their actions to the Department of Human Services (DHS). Milligan reported defendant's statement to both DHS and defendant's parole officer, Cassidy. Cassidy asked Milligan to attend defendant's next parole meeting, on March 16, 2006.

Defendant made the third group of statements about sexual abuse at that parole meeting. At the beginning of the meeting, Milligan told him that she had contacted DHS as he had requested. Milligan and Cassidy questioned defendant, and he detailed sexual acts with J and H, saying essentially the same things that he had said in the group counseling session. At the end of the meeting, defendant's parole officer arrested defendant for violating his parole.

Defendant was subsequently charged with eight counts of first-degree sexual abuse and eight counts of first-degree sodomy. While he was in custody, defendant was interviewed by Detective Pierce. Pierce asked defendant if he had told Hayes that he had touched his children, and he responded that "he did not think he had said that." Pierce then asked whether defendant thought Hayes was lying. He said that "he didn't think that that would be something she would lie about." Pierce also showed defendant a copy of notes that Cassidy had taken at the March 16 parole meeting and asked defendant whether he had made the statements reflected in the notes. Defendant replied that he "probably did say those because that is what has been written down."

At defendant's trial, Hayes, Milligan, Cassidy, and Pierce testified about the above-described statements. In addition to their testimony, the state put on evidence concerning J and H, who are in foster homes and receiving therapy. The DHS case worker who supervises J and H testified that H is attending a day treatment school for help with behavior that includes tantrums, "sexually acting out," and "poor boundaries." She also testified that J does not show "sexual reactivity," but that she "has self-soothing behaviors, so she masturbates," is "touchy[-]feel[y] in inappropriate ways," and has poor "stranger danger" awareness.

After the state presented its case, defendant moved for a judgment of acquittal on the basis that his statements were uncorroborated confessions and that, under ORS 136.425, they could not support convictions. The trial court denied defendant's motion, concluding that all of the statements were admissions. The court found that defendant's statements to Hayes were "not made in order to try to indicate to [Hayes] that he had committed some crime. They were made to explain to her why he didn't go to work." With respect to the statements to Milligan and the counseling group, the court found that defendant

"was feeling as though he had been untruthful and needed to own up to some things and perhaps his conscience was bothering him. I don't know. It seems to me there were other or reasons that he wanted to make the statement to Ms. Milligan, and it seems to me the principle reason is he wanted DHS to become involved with the children. He

wanted DHS to take custody of the children and I don't know why exactly that is, but he implicated his [ex-girlfriend] in the conversation. And again I don't know that he was there to confess to—that he was committing a crime, as much as his interest was being motivated by getting his children out of her custody and into DHS's custody, for whatever reason. There may be some really good reasons for that, but I believe that's what he was being motivated by.

"I also believe that he was motivated in part because his conscience in a counseling session may have been troubling him and he wanted to own up to things there, but I do not believe that again his motivation was to find himself in the midst of a criminal investigation or controversy."

Finally, the court found that defendant's third statement was "made for the same reasons that he made similar statements" at his counseling session.

Defendant rested without presenting any evidence. The court convicted defendant on all 16 counts. This appeal followed.

■■■ At issue on appeal is whether defendant's statements were confessions or admissions and, if they were confessions, whether they were corroborated by "some other proof." ORS 136.425(1) (2005), *amended by* Or Laws 2009, ch 875, § 1,[1] provides that "a confession only [is not] sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed." A statement is a confession if it is "made after the commission of the crime in question, for the purpose of acknowledging that the speaker is guilty of some criminal offense." *State v. Manzella*, 306 Or 303, 316, 759 P2d 1078 (1988). A statement is an admission if it is "made for some purpose other than to acknowledge guilt." *Id.*

Defendant contends that the trial court analyzed the statements incorrectly. He relies on *State v. Muzzy*, 190 Or

---

[1] In 2009, the legislature amended ORS 136.425 to provide that a confession alone is sufficient to warrant a conviction in some circumstances. *See also* ORS 136.427 (setting forth those circumstances). The amended version of ORS 136.425 does not apply in this case, and all references to the statute in this opinion are to the 2005 version.

App 306, 320, 79 P3d 324 (2003), *rev den*, 336 Or 422 (2004), in which we observed that "'purpose,' as employed in *Manzella*, is neither an absolute nor an exclusive concept. A person may have many concurrent and collateral purposes for making a statement." Defendant argues that, although he may have had other purposes in making the statements—to explain why he quit his job, to apologize to his counseling group, and to cause DHS to become involved with the children—his purpose also was to acknowledge guilt. He contends that the trial court erroneously focused on *why* he acknowledged guilt rather than on *whether* he had done so. In defendant's view, his motivation for acknowledging guilt is irrelevant.

The state's primary argument in response echoes the trial court's reasoning. In addition, the state argues that, even if defendant's statements at the group therapy session and in Cassidy's office were confessions, they were sufficiently corroborated by defendant's other statements—namely, the earlier statements to Hayes and the later statements to Pierce—and by the testimony of Burns, the DHS caseworker, concerning the children's behavioral issues. Finally, the state argues that, under ORS 136.425(1), two or more confessions may corroborate each other as long as they are sufficiently separate in time not to be considered part of a single confession. It thus contends that, even if all three groups of defendant's statements were confessions, they corroborate each other and are therefore sufficient to sustain the convictions.

At the outset, we agree with defendant that, in light of *Muzzy*, if his statements were made for the purpose of acknowledging that he was guilty of criminal conduct, it is irrelevant that he may have had other purposes that motivated him to acknowledge his guilt. Accordingly, we consider each of defendant's statements to determine whether acknowledging guilt was at least in part his purpose.

We begin with defendant's four statements to Hayes. As noted, when Hayes asked why defendant had left work, he told her that he had quit because he "thought he touched his kids." When Hayes asked him, "[W]hat do you mean you touched them?" he replied, "I touched them." She then said,

"Either you did or you didn't," and defendant replied that he did. He then told her, "Don't worry, I didn't touch your children * * *." Again, defendant contends that, although part of his purpose was to explain why he had quit his job, it was also to acknowledge that he was guilty of sexually abusing the children.

We conclude that defendant's second and third statements to Hayes—"I touched them" and "I did"—give rise to only one reasonable inference: that defendant's purpose was to acknowledge that he was guilty of sexually abusing the children.[2] We also conclude that, even assuming that defendant's other two statements lacked a confessional purpose, they were so closely related to the second and third statements that they must be considered to be part of the confession.

The purpose of defendant's initial statement to Hayes—that he "thought he touched his kids"—may have been, as the trial court determined, to explain why defendant had left work and not to indicate that he had committed a crime. The statement was in response to an innocuous question—Hayes asking why defendant had left work—and was equivocal about whether he had even engaged in the conduct—he said he *thought* he had touched the children. However, defendant's subsequent two statements were no longer in response to the question about why defendant had left work, but were in response to Hayes's requests for clarification of defendant's initial statement: She effectively asked defendant, "Did you molest your children?" The purpose of defendant's responses—"I touched them" and "I did"—was

_____

[2] As we have previously observed, it is "unclear to what extent the 'purpose' assessment under *Manzella* is objective, subjective, or some combination of the two." *Muzzy*, 190 Or App at 320; *see also State v. Simons*, 214 Or App 675, 684-85, 167 P3d 476 (2007), *rev den*, 344 Or 43 (2008) ("To the extent that the 'purpose' determination involves defendant's subjective intent in making the statement, that intent is a question of fact," and "we are bound by the trial court's finding on the issue if there is any evidence in the record to support it."). This case does not require us to determine whether we review the trial court's "purpose" determination as a question of law—that is, without deference—or only to determine whether it is supported by evidence in the record. The result of our review is the same regardless of whether "purpose" is a question of fact or of law, given that, as to two of the statements, the record gives rise to only one reasonable inference with respect to defendant's purpose and that the other two are so closely related as to be considered part of the confession.

unquestionably to acknowledge that he was guilty of sexually abusing the children. It follows that those statements constituted a confession.

■    Even assuming that defendant's initial statement was not itself a confession, it was "so closely related to his confession as to be a part of it * * *." *Manzella*, 306 Or at 316. As the Supreme Court emphasized in *Manzella*, "*all* statements made during the course of a confession are protected by ORS 136.425(1). The state may not dissect a confession and use isolated statements to corroborate the 'core' of the confession." *Id.* at 316 n 13 (emphasis in original). Given the immediate temporal proximity of the statements and how readily and unequivocally defendant acknowledged his guilt when Hayes asked him to clarify what he meant, the initial statement is so closely related to the confession that it must be regarded as part of it.[3]

We reach the same conclusion with respect to defendant's final statement, assuring Hayes that he had not touched her children. Because that statement came right on the heels of his unequivocal acknowledgments of guilt, which were essential context for the statement, it was too closely related to the confession to be regarded as separate from it.

■    We turn to defendant's statements at the group therapy session. As noted, defendant began by telling the group that he wanted to apologize for lying and then specifically apologized to the man who had helped him prepare his history of sexual thoughts and practices, saying, "I am really, really sorry because I lied to you and I need to tell the truth now." He then described in detail how he had abused the children and alleged that his ex-girlfriend had been present some of the times and that she had abused their younger daughter. Finally, he asked Milligan to report the abuse to DHS.

---

[3] We do not understand *Manzella* to hold, nor do we mean to imply, that, if a confession is made during the course of a conversation, everything else said in the conversation must be regarded as part of the confession for purposes of ORS 136.425(1). This case does not require us to rule out the possibility that a conversation could begin with admissions being made and subsequently evolve into a confession without the admissions being "so closely related to [the] confession as to be a part of it," and we express no opinion on that issue.

The state argues that defendant's purposes in making the statements to the therapy group were to seek forgiveness and to have DHS remove the children from his ex-girlfriend's custody.

■ Defendant may well have had those purposes, but, as the trial court determined, he also had the purpose of acknowledging that he had sexually abused the children. After stating that defendant's principal reason for making the statements was that he "wanted DHS to become involved with the children," the court stated, "I also believe that he was motivated in part because his conscience in a counseling session may have been troubling him and he wanted to *own up to things* there," although it did not believe that "his motivation was to find himself in the midst of a criminal investigation or controversy." (Emphasis added.) As noted above, it is immaterial that defendant's principal reason for making the statements may have been something other than to acknowledge guilt. *See Muzzy*, 190 Or App at 320 ("A person may have many concurrent and collateral purposes for making a statement."). Likewise, it is immaterial that defendant's motive may not have been to instigate a criminal investigation or prosecution. Nothing in *Manzella*, or any other case of which we are aware, suggests that, for a statement to be a confession within the meaning of ORS 136.425(1), the defendant must be so motivated. Given that defendant's purpose in making the statements to the therapy group was at least in part to "own up to" his criminal conduct, the statements constituted a confession.[4]

■ We turn next to defendant's statements at the parole office, which require little discussion. The state all but concedes that defendant's statements at the parole office constituted a confession. The trial court stated that defendant made those statements "for the same reasons that he made similar statements to Ms. Milligan." In light of our determination as to the purpose of the statements to Milligan and the

---

[4] Again, the uncertainty about our standard of review does not prevent us from resolving this issue. Even assuming that "purpose" is a question of fact and that we must defer to the trial court's finding if it is supported by the record, the trial court "found" that defendant's purpose was in part to "own up to" his criminal conduct, and the record supports that view.

therapy group, the statements at the parole office also constituted a confession.

■     We turn to the state's contention that defendant's statements were corroborated by other evidence. The state argues that the statements were corroborated by the testimony of the DHS caseworker that H was having tantrums, was acting out sexually, and had "poor boundaries," and that J engaged in masturbatory behavior and was inappropriately "touchy-feely" with others. The state also contends that defendant's statements were corroborated by his subsequent statement to Pierce, in which he stated that he did not think he had told Hayes that he touched the children, but conceded that that would not be something that Hayes would lie about, and conceded further that he "probably" made the statements that were reflected in Cassidy's notes.

■     As noted, ORS 136.425(1) provides that a confession alone is not sufficient to warrant a conviction without "some other proof that the crime has been committed." The Supreme Court has explained that the statute codified the common-law *corpus delicti* rule, which requires the state to show that " 'the injury or harm specified in the crime occurred' " and that the " 'injury or harm was caused by someone's criminal activity * * *.' " *State v. Lerch*, 296 Or 377, 393, 677 P2d 678 (1984) (quoting McCormick on Evidence § 158, 346-47 (2d ed 1972)). However, "it is not necessary that the corroborating 'proof' independent of the confession prove or establish the *corpus delicti*. The statute only requires that the state introduce independent evidence that *tends* to establish the *corpus delicti*." *Id.* at 394 (emphasis added).

■     Defendant confessed to first-degree sodomy and first-degree sexual abuse. The *corpus delicti* of first-degree sodomy is that a person engaged in "deviate sexual intercourse" with the victim or caused the victim to engage in that act. *State v. Delp*, 218 Or App 17, 29, 178 P3d 259, *rev den*, 345 Or 317 (2008) (citing ORS 163.405). The *corpus delicti* for first-degree sexual abuse is that the victim was subjected to sexual contact. *Id.* (citing ORS 163.427).

Although the threshold for corroboration is low, the evidence that the state cites is insufficient. Defendant's statement to Pierce tends to establish only that defendant previously admitted to committing the crimes. It does nothing to establish that any of the crimes occurred. The testimony of the DHS caseworker, without more, also does not suffice. The state offered no evidence showing that the children's behavior was a result of the children having been abused sexually. Again, the threshold for corroboration is low, but concluding that the children's behavior tends to show that they were sexually abused amounts to little more than speculation on the record before us. We reject the state's argument without further discussion.

Finally, the state argues that each of defendant's confessions can be used to corroborate the others. The state points out that ORS 136.425(1) provides only that "*a* confession" alone does not warrant conviction. According to the state, as long as two or more confessions are sufficiently separate in time so that they could not be considered part of only a single confession, they should be deemed to corroborate each other.

The state's argument presents a question of statutory construction. To determine the legislature's intent, we begin by considering the text in context. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Context includes the common-law backdrop against which the statute was enacted. *Tyree Oil, Inc. v. BOLI*, 168 Or App 278, 282, 7 P3d 571 (2000). On its face, ORS 136.425(1) could be read as the state proposes: It provides that "a confession only [is not] sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed." As the state asserts, "a confession" could be understood to mean "one confession"; thus, two or more confessions are sufficient to warrant a conviction. However, the text can also fairly be read to distinguish between confessions and other types of evidence, such that "some other proof" does not include confessions.

The context indicates that the latter reading is correct. Again, ORS 136.425(1) codified the common-law *corpus delicti* rule. *Manzella*, 306 Or at 305 n 1. The rule arose "in response to celebrated cases in which alleged murder victims

turned up alive after their alleged murderers already had been convicted and hanged for the offenses" based on the alleged murderers' confessions, which, obviously, proved to have been false. *State v. Chatelain*, 347 Or 278, 283, 220 P3d 41 (2009); *see also Manzella*, 306 Or at 310. Thus, the purpose of the rule is to prevent convictions based on false confessions where no crime has in fact occurred. A defendant's repetition of a confession does not satisfy that aim. Accordingly, we reject the state's argument that, under ORS 136.425(1), defendant's confessions were sufficient to corroborate each other.

Because defendant's confessions were not corroborated, they were not sufficient to warrant conviction. The trial court erred in denying defendant's motion for judgment of acquittal.

Reversed.