Argued and submitted August 5, 2020, affirmed August 11, petition for review denied December 9, 2021 (369 Or 69)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THOMAS LEE BENSON,
*Defendant-Appellant.*

Clackamas County Circuit Court
18CR28682; A168917

495 P3d 717

Defendant appeals from a judgment of conviction for failure to report as a sex offender, ORS 163A.040. During defendant's bench trial, the state sought to admit defendant's completed sex offender registration forms from the preceding years as proof that defendant had "knowledge of the reporting requirement," a required element of the crime of failure to report. ORS 163A.040(1). Defendant argued that sections of the forms were inadmissible, compelled self-incrimination when offered for that purpose, because defendant had been required to initial and sign that he understood his reporting obligations, and the forms warned that he could be cited for failure to register if he did not sign them. The trial court admitted the forms over defendant's objection. On appeal, defendant assigns error to the admission of that evidence. *Held*: The requirement that defendant acknowledge his awareness of his specific reporting requirements did not compel self-incrimination in violation of ORS 136.425(1) and Article I, section 12, of the Oregon Constitution. Although the regulatory sex offender registration scheme required defendant to admit to his knowledge of certain legal obligations, defendant was not faced with a substantial risk of self-incrimination at the time he made the acknowledgments because the disclosures did not imply or admit his involvement in any criminal activity. Likewise, defendant was also not presented with "substantial hazards of self-incrimination" as required to invoke the protections of the Fifth and Fourteenth Amendments to the United States Constitution. As such, the admissions were voluntary and the trial court did not err in admitting them.

Affirmed.

Heather Karabeika, Judge.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Criminal Appellate Section, Office of Public Defense Services.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Affirmed.

**SHORR, J.**

Defendant appeals from a judgment of conviction for failure to report as a sex offender, ORS 163A.040.[1] During defendant's bench trial, the state sought to admit defendant's completed sex offender registration forms from the preceding 17 years (including his most recent registration form, which was completed less than two months before the alleged crime) as proof that defendant had "knowledge of the reporting requirement," a required element of the crime of failure to report. ORS 163A.040(1). Defendant argued that sections of the forms were inadmissible, compelled self-incrimination when offered for that purpose, because defendant had been required to initial and sign that he understood his reporting obligations, and the forms warned that he could be cited for failure to register if he did not sign them. The trial court admitted the forms over defendant's objection. On appeal, defendant assigns error to the admission of that evidence for the purpose of proving that defendant had "knowledge of the reporting requirement." For the reasons that follow, we affirm.

## I.   FACTUAL SUMMARY

We review the voluntariness of a defendant's statements as a legal question. *State v. Jackson*, 364 Or 1, 21, 430 P3d 1067 (2018). In so doing, we are bound by the trial court's factual findings if they are supported by the record, and, in the absence of express findings, we presume that the court decided the facts in the light most favorable to the state, the prevailing party below. *Id*. We summarize the relevant facts in accordance with that standard.

We begin with some procedural facts and background on the sex offender reporting and registration requirements. Defendant is a convicted sex offender subject to the reporting requirements outlined in ORS chapter 163A. As a result, defendant is required to "report, in person, to the Department of State Police, a city police department or a

---

[1] ORS 163A.040 and a closely related sex offender registration statute, ORS 163A.010, have been amended and some subsections have been renumbered since the relevant events in this case. We cite the current versions of those statutes because those changes do not affect our analysis.

county sheriff's office" when certain events occur. ORS 163A.010(3)(a). For example, defendant is required to report to an above-mentioned law enforcement agency "[w]ithin 10 days of a change of residence," "[o]nce each year within 10 days of the person's birth date," and "[w]ithin 10 days of a change in work *** status." ORS 163A.010(3)(a)(B), (D), (F).

We briefly explain the registration process, as described by statute and implementing administrative rules. When an offender reports, the registering agency "shall complete a sex offender registration form." ORS 163A.010(1). Defendant, in turn, is required to "[p]rovide the information necessary to complete the sex offender registration form and sign the form as required" and to submit to photographing and fingerprinting. ORS 163A.010(4). Agencies use "forms and procedures adopted by the Department of State Police by administrative rule." ORS 163A.035(1). Afterwards, the agency is responsible for forwarding the completed form to the state police as prescribed. *Id.*

Oregon State Police (OSP) is authorized to adopt and has adopted administrative "rules to carry out the responsibilities of the department." ORS 163A.045(2). Those rules "implement and interpret" the sex offender registration statutes. OAR 257-070-0005; *see generally* OAR ch 257, div 70. Current rules, in effect since 2016, prescribe the completion and submission of forms electronically via "the Department's secure internet website." OAR 257-070-0100(1). OSP has also defined several relevant terms, including "sex offender registration form" ("information regarding sex offenders that is formatted, inscribed, stored and retrievable on a Department approved medium") and "electronic signature" ("an electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record"). OAR 257-070-0015(2), (8). Agency representatives must require offenders to electronically complete the entire form, electronically initial the form where required, and provide an electronic signature. OAR 257-070-0100(4)(c). As relevant here, offenders must "submit to registration as directed by the registering agency and as required by law," "[p]rovide all information necessary to complete the sex offender registration form[,]"

and "[s]ign the form by electronic signature or as directed by the registering agency[.]" OAR 257-070-0110(2), (3)(a) - (b).[2]

ORS chapter 163A also defines the criminal offense of failure to report as a sex offender, ORS 163A.040, which makes it a crime for any "person who is required to report as a sex offender in accordance with the applicable provisions of ORS 163A.010, [ORS] 163A.015, [ORS] 163A.020[,] or [ORS] 163.025 and who has knowledge of the reporting requirement" to fail to report as specified, to fail "to provide complete and accurate information," or to fail "to sign the sex offender registration form as required." ORS 163A.040(1).

Defendant first reported as a sex offender in April 2000, and he submitted registration forms through June 2017. In July 2017, defendant was evicted from his dwelling and became houseless, transiently staying with friends and family for brief periods. Defendant testified that he was confused about how or if he could report when he did not have a residence.[3] He made no attempt to update his registration following his eviction. Several months later, during an unrelated criminal investigation, law enforcement discovered that defendant was no longer living at his registered address. Defendant was charged with failure to report, ORS 163A.040, and the case proceeded to a bench trial.

---

[2] At issue in this case, as we will explain below, are the particular parts of the registration form that require defendant to acknowledge that he is aware of his reporting requirements. We do not understand defendant's arguments on appeal to challenge OSP's authority to require that acknowledgment, either as a violation of the authority delegated to the department, or as a violation of the department's own administrative rules.

[3] We briefly acknowledge that, immediately before the events at issue in this case, ORS 163A.040(1)(d) was amended. Defendant's last registration occurred on June 5, 2017. On June 22, 2017, a legislative change to ORS 163A.040(1)(d) went into effect; where it had previously been a crime for an offender to move "to a new residence and fail[ ] to report the move and the person's new address," that paragraph was changed to make it a crime for an offender to fail "to report following a change of residence." Or Laws 2016, ch 95, § 4a; Or Laws 2017, ch 418, § 1. Subsequent to that change in the law, defendant left his registered address on July 21, 2017. The change appears to have brought the language of ORS 163A.040(1)(d) in line with ORS 163A.010(3)(a)(B), the latter of which, at all relevant times, required defendant to report within 10 days of "a change in residence." Defendant raised arguments based on that change in the law during trial but does not repeat them on appeal. For our purposes, we need only consider the statutory language that was in effect at the time defendant committed the crime of failure to report. That language is reflected in the current version of ORS 163A.040, which we cite throughout this opinion.

At trial, the state sought to introduce defendant's past sex offender registration forms from the preceding years, which comprised a packet of forms totaling nearly 80 pages. The forms themselves had varied over the years, but each form followed the same general format. Each consisted of two pages: a first page, which listed defendant's biographical information, and a second page, which listed the specific circumstances that would prompt an offender's responsibility to report. Prior to 2014, the second page of each form merely listed each of those registration requirements and did not ask the offender to confirm his awareness of each individual requirement. Instead, the offender was directed to sign below text stating, "I have read and I understand the reporting requirements as outlined on [this] form. Under penalty of perjury, I certify the above information is true and correct." Beginning in 2014, however, an updated form directed defendant to initial next to each separate registration requirement before signing at the bottom of the form. Each individual reporting requirement was followed by the text, "I understand my initials mean I am aware of my requirement," and the signature line appeared directly below text stating, "I have read the information listed above. Under penalty of false swearing * * *, I certify the above information is complete and correct. * * * I understand I am required to sign the form or I can be cited for Failure to Register under ORS [163A.040(1)(h)]."

Defendant's most recent registration form had been completed in June 2017, about seven weeks before his alleged failure to report. That registration was completed using the updated form, which requested defendant's initials next to each individual reporting obligation. Among the listed requirements, the form stated that he needed to report "[n]o more than 10 days before and no more than 10 days after I move out of my registered address[.]" The state presented the forms along with the testimony of Oregon City Police Officer Hutteball, who had assisted defendant in completing his June 2017 registration. Hutteball described the registration process, which involves Hutteball asking the offender a series of questions and inputting the responses into a computer system to complete the form electronically. Hutteball then directs the offender to provide his initials

and signature via an electronic pad. Although Hutteball is a civilian employee, he dresses in a uniform displaying the police emblem and works within the police station.

Defendant objected to the admission of every page of the past sex offender registration forms that contained his initials or signature, arguing that, although the forms could be admissible for certain limited purposes, they were inadmissible, compelled self-incrimination when offered to prove an element of the crime of failure to report, specifically, that defendant had "knowledge of the reporting requirement." ORS 163A.040(1). Defendant asserted that he had been compelled to initial and sign the forms under threat of prosecution for failure to report.

The trial court rejected defendant's arguments and admitted the past forms in full. Throughout the remainder of the trial, the state relied on the acknowledgments contained in defendant's completed forms (with particular focus on his June 2017 registration form) in arguing that defendant had been aware of his reporting requirements when he failed to report following his eviction in July 2017. Defendant was convicted, and this timely appeal followed.

## II. ORS 163A.040(1) PROVISION THAT AN OFFENDER HAVE "KNOWLEDGE OF THE REPORTING REQUIREMENT"

Preliminarily, the parties dispute the meaning of ORS 163A.040(1)'s provision that an offender must have "knowledge of the reporting requirement" to be convicted of the crime of failure to report as a sex offender. The state contends that "[t]he knowledge requirement contained in the sex offender registration statute merely requires general notice of the requirement to register" and is fulfilled as long as a defendant is aware that he is a person who is required to report generally. Defendant, on the other hand, contends that the statute requires the state to prove that the defendant had "actual knowledge" of his specific reporting requirements, including "when and how to register."

When presented with an appeal in which the parties dispute the required elements of the crime of conviction, we usually must first resolve that dispute and determine what

exactly the legislature intended for the statute to require before addressing other issues. *See, e.g.*, *State v. Jones*, 223 Or App 611, 616, 196 P3d 97 (2008), *rev den*, 345 Or 618 (2009) (addressing dispositive statutory interpretation issue before addressing other arguments). However, we need not do so in all cases, and have at times declined to construe a statute if the merits of the appeal can be decided without doing so. *See, e.g.*, *State v. Anderson*, 233 Or App 475, 480, 227 P3d 192, *rev den*, 348 Or 414 (2010) (declining to decide mental state requirement of felon-in-possession statute where appellate argument that the indictment was legally insufficient could be rejected regardless of the statute's construction). We are presented with such a case here. As we explain below, even assuming, without deciding, that defendant's interpretation of the statute is correct, the admissions contained in defendant's previous sex offender registration forms did not constitute inadmissible, compelled self-incrimination under either state or federal law.

## III.   VOLUNTARINESS ANALYSIS

Defendant assigns error to the trial court's admission of "the portions of [the completed registration forms] that contained defendant's statements that he had read and understood his sex offender reporting requirements," repeating his trial argument that those statements were involuntary. As explained earlier, we decide the voluntariness of a defendant's statements as a legal question. *Jackson*, 364 Or at 21.

Defendant cites three sources of authority for his contention that the initials and signatures contained in his registration forms were involuntary and inadmissible admissions: ORS 136.425(1), Article I, section 12, of the Oregon Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution. Defendant contends that the forms compelled his "admission to an element of a crime, *viz.*, that he had knowledge of the reporting requirement," in large part because the forms stated that he could be prosecuted for failure to report if he did not sign them. (Citation omitted.) In response, the state argues that "the type of regulatory reporting at issue here does not implicate the prohibitions against compelled self-incrimination." Specifically,

the state contends that defendant did not preserve his arguments under ORS 136.425(1) and that the forms did not create either a "substantial risk of self-incrimination" under Article I, section 12, or a "substantial hazard of self-incrimination" pursuant to the Fifth Amendment.

A.   *Preservation*

We begin by addressing the state's contention that defendant's arguments under ORS 136.425(1) are unpreserved. Upon reviewing the record, we acknowledge that defendant never directly cited ORS 136.425(1) to the trial court; defendant argued that the admissions were "compelled self-incrimination" pursuant to "the privilege," clarifying only once that the authority for his arguments rested in Article I, section 12, and the Fifth Amendment. However, we nevertheless conclude that defendant adequately preserved his arguments under ORS 136.425(1), because defendant's citation to that authority on appeal does not meaningfully change his arguments from those raised in the trial court.

Our case law establishes that ORS 136.425(1) and Article I, section 12, both set out the same prohibition against compelled self-incrimination, and we have frequently chosen not to differentiate those authorities when analyzing voluntariness in our prior cases. In fact, defendant cited one of those cases in his arguments to the trial court—*State v. Tenbusch*, a case where the defendant's probationary obligations required that he be truthful about his sexual history or face possible revocation. 131 Or App 634, 640, 886 P2d 1077 (1994), *rev den*, 320 Or 587, *cert den*, 516 US 991 (1995). *Tenbusch* involved voluntariness claims under ORS 136.425(1) and the state and federal constitutions, although neither the parties nor the court analyzed the statutory claim independently. *Id.* at 640 n 3. The analytical approach in *Tenbusch* is consistent with more recent cases where we have stated that the voluntariness requirements of ORS 136.425(1) and Article I, section 12, are essentially the same, and where we have not considered those authorities via separate analyses. *See, e.g.*, *State v. Chavez-Meza*, 301 Or App 373, 386 & n 2, 456 P3d 322 (2019), *rev den*, 366 Or 493 (2020); *State v. Vasquez-Santiago*, 301 Or App 90, 105,

456 P3d 270 (2019); *State v. Ruiz-Piza*, 262 Or App 563, 572-73, 325 P3d 802 (2014). When faced with unpreserved ORS 136.425(1) arguments and preserved Article I, section 12, arguments in *State v. Rodriguez-Moreno*, we explained that the coextensive nature of the voluntariness requirements posed by those two authorities made the question of whether the court addressed the defendant's ORS 136.425(1) arguments "irrelevant to the outcome." 273 Or App 627, 633 n 6, 359 P3d 532 (2015), *rev den*, 358 Or 611 (2016). In light of the above cases, defendant's citation to ORS 136.425(1) on appeal does not render his arguments meaningfully distinct from those raised in the trial court pursuant to Article I, section 12.

That congruence between the voluntariness requirements of ORS 136.425(1) and Article I, section 12, in turn, informs our preservation analysis. Our preservation rules do not typically require parties to cite specific authorities, so long as they raise the relevant issue. *See State v. Walker*, 350 Or 540, 549, 258 P3d 1228 (2011) ("[A]dducing particular authorities is not a prerequisite to preservation."); *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) ("We have previously drawn attention to the distinctions between raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument*. The first ordinarily is essential, the second less so, the third least." (Emphases in original; internal citation omitted.)). At trial, defendant clearly raised the issue he now repeats on appeal—that the acknowledgments contained in his prior registration forms were inadmissible, compelled self-incrimination.

In light of the pragmatic considerations underlying our preservation rules, the content of defendant's arguments below, and our understanding that ORS 136.425(1) and Article I, section 12, contain coextensive voluntariness requirements, we conclude that defendant adequately preserved the issue he now raises on appeal. As in *State v. Roble-Baker*, "the state has not been taken by surprise, misled, or denied the opportunity to meet defendant's arguments." 340 Or 631, 640, 136 P3d 22 (2006). The state and the trial court had a sufficient opportunity to consider the same voluntariness arguments that defendant now makes on appeal.

Thus, we proceed to consider the merits of defendant's arguments on appeal. We consider defendant's voluntariness arguments under state law as one, with the acknowledgment that the voluntariness protections under ORS 136.425(1) and Article I, section 12, are, in all important respects, identical. We then turn to defendant's arguments under the Fifth Amendment. *See State v. T. T.*, 308 Or App 408, 416, 479 P3d 598, *rev den*, 368 Or 37 (2021) (describing "first things first" approach of resolving state law questions before addressing claims under the federal constitution).

B.  *Voluntariness Analysis under Oregon Law*

Article I, section 12, provides that "[n]o person shall be *** compelled in any criminal prosecution to testify against himself." Relatedly, ORS 136.425(1) requires that "[a] confession or admission of a defendant, whether in the course of judicial proceedings or otherwise, cannot be given in evidence against the defendant when it was made under the influence of fear produced by threats."[4] The relevant inquiry, under both authorities, is the voluntariness of defendant's statements or "whether the state met its burden to prove that defendant's free will was not overborne and his capacity for self-determination was not critically impaired, and that he made his statements without inducement from fear or promises." *Jackson*, 364 Or at 22. At trial, a defendant's admissions are initially deemed to be involuntary, and it is the state's burden to overcome that presumption by offering evidence affirmatively establishing voluntariness. *State v. Hogeland*, 285 Or App 108, 114, 395 P3d 960 (2017).

---

[4] Oregon's protections against self-incrimination apply to both confessions and admissions, *State v. Smith*, 301 Or 681, 693, 697, 725 P2d 894 (1986), and, for that reason, the distinction between the two is not important to our analysis here. "A statement is a confession if it is made after the commission of the crime in question, for the purpose of acknowledging that the speaker is guilty of some criminal offense[,]" and "[a] statement is an admission if it is made for some purpose other than to acknowledge guilt." *State v. Kelley*, 239 Or App 266, 271, 243 P3d 1195 (2010), *rev den*, 350 Or 131 (2011) (internal quotation marks omitted). In other words, "[a]n admission is a concession or voluntary acknowledgment made by a party of the existence of certain facts that are relevant to the cause of the adversary." *State v. Eves*, 163 Or App 588, 591, 989 P2d 46 (1999) (internal quotation marks omitted).

However, the analysis—whether a defendant made the statements freely without inducement—is complicated when the government requires certain disclosures as part of a regulatory framework. The primary case that informs our understanding of that exception is *State v. Monroe*, 101 Or App 379, 790 P2d 1188 (1990). In *Monroe*, we explained that, when disclosures are compelled within a regulatory context, "a remote possibility of self-incrimination is not sufficient to trigger Article I, section 12; a substantial risk of self-incrimination is necessary." *Id.* at 382. The state contends that *Monroe* controls our analysis in the instant case, and we agree.

In *Monroe*, the defendant appealed her conviction for failure to perform the duties of a driver, ORS 811.700, challenging the statute as unconstitutional and contending that its requirement that a driver involved in an accident supply her name and address to the other driver compelled incriminating statements, because that information would establish "at least two elements of a criminal prosecution for offenses ranging from driving under the influence, through reckless driving and malicious mischief, down to and including careless driving." *Id.* at 381-82.

We concluded that the requirements of the statute did not violate Article I, section 12, because they were regulatory in nature and did not present a substantial risk of self-incrimination. *Id.* at 383-84. We determined that the requirements presented little more than a "remote possibility" that reported information would furnish proof of a crime, much like other regulatory requirements such as the requirement that doctors report the deaths of patients or the requirement that issuers register their securities before sale. *Id.* at 383. We considered several reasons in support of that conclusion. First, "the statute does not require a report to the police, but only the furnishing of information to the other driver," limiting a compliant driver's chance of criminal liability and suggesting that "prosecution is not an aim of the statute." *Id.* Relatedly, "most accidents do not result in criminal liability," supporting the contention that "the statute does not seek disclosure of information that is inherently related to criminal prosecution." *Id.* Lastly, "the purpose of ORS 811.700(1)(a) is noncriminal" and "'[t]he essence

of the statute is to maximize the protection of one injured in an accident \* \* \*.'" *Id.* (quoting *State v. Hulsey*, 3 Or App 64, 71, 471 P2d 812 (1970)).

We ultimately determined that "the statute is not unconstitutional on its face." *Id.* Further, because the defendant had not "pointed to *any* actual possibility, even a remote one, of prosecution that might have occurred had she obeyed [the statute]," complying "would not have placed defendant substantially at risk of incriminating herself." *Id.* at 383-84 (emphasis in original). We acknowledged that, "[i]n virtually every situation that requires reporting of information, there exists *some* possibility of criminal liability for which the reported information may be an element of proof. However, that remote possibility is not enough to invoke the privilege against self-incrimination." *Id.* at 383 (emphasis in original). As noted, there must, instead, be a "substantial risk of self-incrimination." *Id.* at 382.

We understand *Monroe* to present a two-step inquiry. First, we must determine whether the claimant's statements were compelled by a regulatory statute or framework. *Id.* If the requirements are "regulatory," then, second, we must determine whether complying with the requirements presented the claimant with a "substantial risk of self-incrimination." *Id.* As noted, in resolving that question, the *Monroe* court considered (1) whether the disclosures must be made directly to law enforcement or some other individual or entity; (2) whether the disclosures involve circumstances or conduct that is inherently criminal, or that carries an inherent risk of criminal liability or prosecution; and (3) whether the purpose of the disclosure requirement is to assist with the state's criminal prosecutions, or whether instead the disclosure requirement is motivated by another, noncriminal purpose. *Id.* at 383. Although *Monroe* did not enumerate other considerations, voluntariness is a question that requires review of the totality of the circumstances. *See Jackson*, 364 Or at 21. Overall, the question before the court is whether the act of complying with the regulatory requirement placed the claimant at a substantial risk of incriminating themselves. If the disclosures were not compelled by a "regulatory" framework, then our standard voluntariness inquiry applies, and we consider whether the claimant's free

will was overborne, their capacity for self-determination was critically impaired, or their statements were induced by fear or promises. *See id*. at 22.

Before we apply *Monroe* to the facts of the instant case, however, we must address two preliminary issues. First, as we explained earlier, defendant's older registration forms required his signature below text stating, "I have read and I understand the reporting requirements as outlined on [this] form. \*\*\* I certify the above information is true and correct." However, beginning in 2014, defendant was required to first initial next to each individual reporting requirement and text stating, "I understand my initials mean I am aware of my requirement," before also signing at the bottom of the form, below text stating, in part, "I have read the information listed above. \*\*\* I certify the above information is complete and correct." Therefore, the statements at issue in defendant's most recent registration forms arose from two different parts of the forms: defendant's initials acknowledged that he was aware of his specific reporting requirements, and his signature further confirmed that he had read the form and attested to the accuracy of the form as a whole. We note that the parties do not distinguish those varying aspects of defendant's recent forms in any meaningful way, nor do they distinguish the statements in defendant's older forms from his more recent ones. As a result, we assume, without deciding, that they all had the effect of acknowledging defendant's awareness or understanding of his reporting requirements, and we do not consider them to constitute meaningfully distinct statements for our purposes.

Secondly, the *Monroe* test requires that we focus on the specific reporting or disclosure requirements at issue. In so doing, we note that the parties do not distinguish between the various aspects of the forms that could be viewed as presenting distinct disclosure requirements: the requirement that defendant sign the form generally, the requirement that his signature be interpreted to have a certain meaning due to the accompanying text, the requirement that defendant initial next to his reporting obligations, and the requirement that those initials be interpreted to mean that he is aware of his obligations. The distinction, if any,

between those various requirements is unclear. Both parties acknowledge that defendant was statutorily required to sign the form and raise arguments relating to that specific requirement. But neither party presents any argument specific to the requirement that defendant initial the form, or the text stating that defendant's signatures and initials indicate his understanding or awareness of the reporting requirements, as potentially distinct requirements warranting their own individual *Monroe* analysis.

The state bears the burden of proof on issues of voluntariness, but it is also true that we will not "make or develop a party's argument when that party has not endeavored to do so itself." *Butler Block, LLC v. TriMet*, 242 Or App 395, 413, 255 P3d 665 (2011) (internal quotation marks omitted). In the instant case, *both* parties frame the issue before us as one of whether the sex offender registration form compelled self-incrimination, in light of defendant's legal obligation to sign the form or face prosecution, without presenting the issue as involving multiple distinct disclosure requirements. As a result, we do the same, assuming, without deciding, that there are no significant distinctions between the form's various requirements that would weigh on our *Monroe* analysis or otherwise warrant separate consideration.

With that said, we begin our analysis by considering whether a "regulatory" framework compelled defendant to initial and sign his previous sex offender registration forms, acknowledging that he was aware of his specific reporting requirements. First, we acknowledge that the sex offender registration statutes as a whole were enacted "to assist law enforcement agencies in preventing future sex offenses." ORS 163A.045(1). When faced with the question of whether the legislature intended the registration laws to be punitive or regulatory in *State v. MacNab*, the Supreme Court concluded that "[w]e need look no further than the legislature's recital and the structure of the statutes to conclude that the purpose of the registration requirement is regulatory." 334 Or 469, 482, 51 P3d 1249 (2002). In *Meadows v. Board of Parole*, we explained that, although it was clear that the legislature intended for the predatory sex offender notice statute to help prevent crimes, there was no apparent

intent "to deter potential criminals from committing crimes through use of fear." 181 Or App 565, 573, 47 P3d 506 (2002), *rev den*, 335 Or 355 (2003). Although those cases analyzed a different issue, we conclude that they are sufficiently analogous to the issue before us. In short, we are persuaded that the sex offender registration scheme as a whole is indeed regulatory.

We recognize that the overall sex offender registration scheme is not at issue in this case; instead, defendant challenges the registration forms to the extent that they demand his initials and signature acknowledging his awareness of the reporting requirements. But the requirement that defendant confirm his knowledge of his obligations as part of the sex offender registration process is also regulatory in nature, and results from the legislature's delegation of authority over the registration process to OSP. OSP has the authority to carry out sex offender registration and has created administrative rules to fulfill those duties. ORS 163A.045(2); OAR 257-070-0005; OAR ch 257, div 70. OSP also has the authority to design the sex offender registration form and has defined "sex offender registration form" to mean "information regarding sex offenders that is formatted, inscribed, stored and retrievable on a Department approved medium." ORS 163A.035(1); OAR 257-070-0015(8). One rule directs registering agencies to require offenders to electronically complete, initial, and sign the form; another rule requires offenders themselves to submit to the direction of those registering agencies. OAR 257-070-0100(4)(c); OAR 257-070-0110(2). In light of the legislature's delegation of authority over the sex offender registration process and form to OSP, and OSP's creation of rules and forms in accordance with that authority, the acknowledgment requirement is as "regulatory" as the registration requirement itself.

Because the acknowledgment requirement is fundamentally regulatory in character, we now consider whether the requirement placed defendant at a "substantial risk of self-incrimination," as described in *Monroe*. First, unlike the "hit and run" statute at issue in *Monroe*, the registration process requires defendant to report directly to law enforcement, which raises a risk that a disclosure may result in

criminal liability and prosecution. However, the remaining considerations all favor the opposite conclusion.

Defendant's acknowledgment of his awareness of the reporting requirements, made during the registration process, was not inherently criminal and did not carry an inherent risk of criminal liability or prosecution. As with car accidents, registrations themselves do not result in the offender's prosecution; indeed, the act of appearing in person to complete a sex offender registration form and acknowledge awareness of the reporting requirements shows *compliance* with the law, for which few, if any, offenders would come under any suspicion. And, although here, criminal liability did attach to defendant's later failure to fulfill certain reporting obligations, that does not render his earlier acknowledgments inherently criminal or mean that fulfilling the acknowledgment requirement created an inherent risk of criminal liability. At the time the acknowledgments were made, defendant did not face even a remote risk that disclosing his knowledge of the reporting requirements would result in his prosecution. The acknowledgments only took on a criminal character when (1) an event occurred that triggered defendant's reporting obligation and (2) defendant subsequently failed to report in accordance with that obligation. The requirement that he acknowledge his awareness, alone, had no incriminating nature absent those later events. Importantly, defendant's own subsequent criminal conduct was a pivotal and necessary factor that raised the specter of criminal liability.

Lastly, we consider whether the requirement that defendant initial and sign the registration form acknowledging his awareness of the reporting requirements was intended to assist with the state's criminal prosecutions or motivated by some other noncriminal purpose. Because the parties consider the issue as one undivided disclosure requirement, focusing primarily on the statutory signature requirement, we look to the legislative history that bears on that requirement. In 2009, the legislature took up House Bill (HB) 2169, which proposed several changes to the sex offender reporting statutes that "[c]larifie[d] sex offender reporting procedures." Staff Measure Summary,

Senate Committee on Judiciary, HB 2169, May 11, 2009 (SCJ Staff Measure Summary). At that time, the reporting requirements did not explicitly require an offender to provide the information necessary for the registering agency to complete the registration form; instead, the registering agency was tasked with the responsibility of completing the form. *See former* ORS 181.595 (2007), *renumbered as* ORS 181.806 (2013), *renumbered as* ORS 163A.010 (2015). The 2009 changes made clear that the offender bore the ultimate responsibility for providing that information and added the requirement that the offender was responsible for "[p]rovid[ing] the information necessary to complete the sex offender registration form and sign[ing] the form as required[.]" Or Laws 2009, ch 204, § 1. The changes also affected the statute defining the offense of failure to report, making it a crime for an offender to fail to sign the form or submit to photographing or fingerprinting. Or Laws 2009, ch 204, § 4.

The legislature's primary purpose in effectuating that legal change was to ensure that registrants provide complete and accurate information and confirm that information through signature. The committees that took up the bill were told of past instances where offenders had flipped a business card at the registering agent and walked away, or where offenders had presented themselves at a registering agency after hours. Audio Recording, House Committee on Judiciary, HB 2169, Feb 3, 2009, at 3:21 (comments of Vi Beatty), https://olis.oregonlegislature.gov (accessed Aug 4, 2021) (HCJ Audio Recording); Audio Recording, Senate Committee on Judiciary, HB 2169, May 7, 2009, at 1:05:49 (comments of Vi Beatty), https://olis.oregonlegislature.gov (accessed Aug 4, 2021) (SCJ Audio Recording); *see also* SCJ Staff Measure Summary (summarizing such instances). Some trial courts had concluded that those offenders had fulfilled their reporting obligations pursuant to the then-existing reporting statutes. HCJ Audio Recording at 3:21; SCJ Audio Recording at 1:05:49. Although the legislative history also highlights some concern that the then-existing law presented "a possible issue at any subsequent trial for failure to register as a sex offender," SCJ Staff Measure Summary, those concerns were centered on the role of the

offense as the enforcement mechanism for the entire registration system. When offenders who had physically reported but not engaged with the process were later prosecuted for failure to report, those cases had reached inconsistent results based on varied interpretations of the reporting statutes by the trial courts. SCJ Audio Recording at 1:05:49. The legislature's acknowledgment that lack of clarity in the registration laws also hampered the scheme's enforcement mechanism does not suggest that criminal prosecution was the primary motive for the change. Indeed, the legislative history makes clear that the main concern was with effectuating the state's overall sex offender registration system by ensuring that offenders actually completed the registration process. When the new law went into effect, offenders were explicitly obligated to sign on the form's signature line, which, at that point in time, accompanied text that stated, in part, "I have read and I understand the reporting requirements as outlined on [this] form."

The above legislative history supports the contention that, when the legislature enacted the signature requirement, it was primarily intended to serve a noncriminal purpose: to ensure that sex offenders actually register, which in turn ensures that the sex offender registration system as a whole continues to function. And, as mentioned earlier, defendant's criminal liability here only arose when two subsequent events occurred: first, when a change in defendant's circumstances triggered his obligation to report, and, second, when defendant failed to report that change. His criminal liability was not the result of or caused by his acknowledgments but was caused by his own later conduct in failing to register. The lack of any criminal liability flowing from the acknowledgments themselves also supports the contention that the acknowledgment requirement is not intended primarily as a prosecution tool.

Applying *Monroe*, we conclude that the regulatory requirement that defendant acknowledge his awareness of his reporting obligations did not place him at a substantial risk of self-incrimination. Although defendant was required to report to law enforcement, the information he provided did

not imply or admit his involvement in any criminal activity. If anything, it signaled his compliance with the registration statutes. Further, the acknowledgment requirement was not designed as a prosecution tool and was, instead, intended to ensure continued offender registration. Although defendant's acknowledgments later became evidence against him in a criminal prosecution, that alone is not sufficient to establish that defendant was faced with a *substantial* risk of self-incrimination *at the time he made the acknowledgments*, when the totality of the above circumstances are considered. As such, we conclude that, as in *Monroe*, the requirement that defendant acknowledge his awareness of his reporting obligations did not confront defendant with a substantial risk of self-incrimination at the time he completed the forms.

Finally, under our state law analysis, we address defendant's argument that our decision is controlled by *State v. Gaither*, a case where we concluded that a probationer's required disclosure of his past victims was involuntarily compelled. 196 Or App 131, 138, 100 P3d 768 (2004), *rev den*, 338 Or 488 (2005). We reached that conclusion in *Gaither* because the facts of that case elucidated that the "defendant had no choice other than to disclose or face revocation of his probation"; he would have been punished with a probation violation had he invoked the right to remain silent. *Id.* Here, defendant contends that, as in *Gaither*, his "legal obligation to sign the forms, and the threat of punishment for refusing to do so," made the acknowledgments contained in those forms involuntary. However, we conclude that *Gaither* does not inform our analysis here. *Gaither* involved a probationary requirement that the defendant disclose his past victims, which in effect required him to acknowledge that he had committed past crimes. *Id.* Here, the requirement that defendant initial and sign an acknowledgment of his awareness of his registration requirements did not require him to disclose his involvement with any criminal activity. Although defendant was threatened with prosecution if he failed to sign the forms, that did not present defendant with a choice between self-incrimination and compliance, because no crime had occurred at that point in time for which he could incriminate himself.

Further, despite defendant's citation to numerous cases, nowhere does he direct us to any case law that could support a conclusion that his acknowledgments constituted compelled self-incrimination under the facts presented here. Defendant was not engaged in criminal activity and was not under any suspicion at the time he made the admissions. And, the information disclosed had no incriminating character until (1) subsequent events prompted defendant's reporting obligation and (2) defendant failed to report, thereby creating an imminent risk of criminal liability. Although we recognize defendant's argument and consider this a close case, we cannot ignore the absence in our case law of support for defendant's position on appeal.

In conclusion, the requirement that defendant acknowledge his awareness of his specific reporting requirements did not compel self-incrimination in violation of ORS 136.425(1) and Article I, section 12. Although the regulatory sex offender registration scheme required defendant to admit to his knowledge of certain legal obligations, that requirement did not create a substantial risk of self-incrimination. Indeed, that information was not incriminating at all at the time that it was disclosed. As such, the admissions were voluntary and the trial court did not err in admitting them.

C.   *Voluntariness Analysis Under the Federal Constitution*

Our analysis under the federal constitution is comparable. The Fifth Amendment provides, in part, "No person *** shall be compelled in any criminal case to be a witness against himself." The Fourteenth Amendment provides, in part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." Together, those constitutional provisions require that a confession or admission be voluntary to be admitted into evidence. *Dickerson v. United States*, 530 US 428, 433, 120 S Ct 2326, 147 L Ed 2d 405 (2000). As under Oregon law, the test for voluntariness is whether, under the totality of the circumstances, it is apparent that the defendant's will was not overborne and his capacity for self-determination was not critically impaired. *Schneckloth v. Bustamonte*, 412 US 218, 225-26, 93 S Ct 2041, 36 L Ed 2d 854 (1973).

However, as under Oregon law, that straightforward calculus is complicated when admissions are compelled by a noncriminal regulatory regime; statements compelled by such a regime do not necessarily invoke the privilege against self-incrimination, even if they "may prove incriminating." *Baltimore Dept. of Social Servs. v. Bouknight*, 493 US 549, 555-56, 110 S Ct 900, 107 L Ed 2d 992 (1990). When a regulatory framework compels certain disclosures, a claimant seeking to invoke the privilege must "show that the compelled disclosures will themselves confront the claimant with substantial hazards of self-incrimination." *California v. Byers*, 402 US 424, 429, 91 S Ct 1535, 29 L Ed 2d 9 (1971) (plurality opinion) (internal quotation marks omitted). Claimants are likely not confronted with such hazards where the inquiries are "neutral on their face and directed at the public at large" and part of an "essentially noncriminal and regulatory area of inquiry." *Albertson v. SACB*, 382 US 70, 79, 86 S Ct 194, 15 L Ed 2d 165 (1965). For instance, a court order requiring a custodial mother with an open juvenile dependency case to produce her child and a California law requiring drivers involved in accidents to stop and give their names and addresses did not present substantial hazards of self-incrimination. *Bouknight*, 493 US at 555-56; *Byers*, 402 US at 431. On the other hand, substantial hazards of self-incrimination are likely where inquiries are "directed at a highly selective group inherently suspect of criminal activities," "in an area permeated with criminal statutes," where the government demands "the admission of a crucial element of a crime." *Albertson*, 382 US at 79. For instance, federal statutes that required individuals to register and pay taxes for gambling activities and orders that required members of the Communist Party to register did present substantial hazards of self-incrimination where the conduct at issue (gambling and membership in the Communist Party) constituted criminal conduct. *Grosso v. United States*, 390 US 62, 66, 88 S Ct 709, 19 L Ed 2d 906 (1968); *Marchetti v. United States*, 390 US 39, 48, 88 S Ct 697, 19 L Ed 2d 889 (1968); *Albertson*, 382 US at 77. When a required disclosure is potentially incriminating, resolving whether the privilege applies requires "balancing the public need on the one hand, and the individual claim to constitutional protections on the other." *Byers*, 402 US at 427.

Our analysis under the federal constitutional provisions reaches the same result as our analysis under Oregon law. The requirement that an offender acknowledge that they are aware of their registration requirements exists as part of a noncriminal regulatory framework, is individually regulatory in nature, and serves the noncriminal purpose of effectuating Oregon's sex offender registration system. We acknowledge factors that weigh in defendant's favor. Although the acknowledgment requirement applies equally to all who register, the requirement falls only on convicted sex offenders, a group we can hardly deny is "inherently suspect of criminal activities." *Albertson*, 382 US at 79. And, if defendant's interpretation of ORS 163A.040(1) is correct, the disclosures compelled by the reporting forms can provide the state with "the admission of a crucial element of a crime," if that offender later fails to report. *Id*. However, the acknowledgment requirement still did not present defendant with substantial hazards of self-incrimination. The disclosures did not by themselves "implicate anyone in criminal conduct." *Byers*, 402 US at 434. As we explained earlier, at the time defendant completed the forms, the disclosures signaled his compliance with the law rather than his violation of it. Defendant had to subsequently commit the criminal conduct of failing to report before his earlier acknowledgments developed any incriminating nature.

That circumstance distinguishes the instant case from the cases cited by defendant. We start with *Marchetti*, which defendant cites for the proposition that "the [privilege against self-incrimination] applies even to statements made before the defendant commits a crime."

In *Marchetti*, the United States Supreme Court determined that a requirement that the defendant acquire a federal gambling tax stamp, even though required before the defendant had engaged in illegal gambling, nevertheless effectively declared the defendant's "present intent to commence gambling activities, oblig[ing] even a prospective gambler to accuse himself of conspiracy to violate" various gambling statutes. 390 US at 52-53. Here, defendant's admissions that he was aware of the registration requirements admitted no crime at all at the time they were made,

nor did they indicate that defendant intended to engage in future criminal activity. That reality also distinguishes defendant's situation from *Redwine v. Starboard, LLC*, 240 Or App 673, 683, 251 P3d 192 (2011), which defendant cites for the proposition that "[t]he [Fifth Amendment] protection does not depend on whether a criminal prosecution is pending." (Internal quotation marks omitted.) In *Redwine*, the appellant was called to testify in civil proceedings on a topic closely related to the federal criminal investigation then pending against her. *Id.* at 675-76. Unlike the appellant in *Redwine*, defendant had not engaged in any relevant criminal activity at the time he made the statements contained in his past registration forms and was under no suspicion of such activity. In light of those realities, the requirements of the sex offender registration process would not lead an offender to "realistically *** expect that registration will substantially increase the likelihood of his prosecution." *Haynes v. United States*, 390 US 85, 97, 88 S Ct 722, 19 L Ed 2d 923 (1968). And, despite defendant's citation of the above cases in his favor, he fails to point us to any case in which the federal courts have found substantial hazards of self-incrimination under circumstances similar to those presented in this case. For those reasons, we conclude that the requirement that defendant acknowledge his awareness of his reporting obligations did not present him with "substantial hazards of self-incrimination."

In conclusion, the trial court did not err in admitting defendant's prior sex offender registration forms. The admissions contained in those forms did not present either "substantial risks" or "substantial hazards" of self-incrimination, as required to render defendant's admissions involuntary and inadmissible under either ORS 136.425(1) and Article I, section 12, or the Fifth and Fourteenth Amendments.

Affirmed.